UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SONNY DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01834-JPH-MJD |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT**

Sonny Davis's petition for a writ of habeas corpus seeks relief from his conviction and sanctions in prison disciplinary case CIC 25-05-1777. For the following reasons, his petition is **denied**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass.*

*Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**II. The Disciplinary Proceeding**

A May 17, 2025 conduct report charged Mr. Davis with battery against an incarcerated person, code 212:

> On 5/17/25, at approximately 2:50 AM, I Officer Corter #144 heard arguing and scuffling coming from the bottom right side of the 2 range in D unit and I then approached that part of the unit. Once I got near the microwave in the middle of the dayroom, I saw Incarcerated Individual Davis, Sonny #128888 14U-4D grappling with Incarcerated Individual Ocampo, Alan #281850 3L-2D in the lower right bathroom of the 2 range of D unit. I Officer Corter then called a 10-10 on the radio, told the Offenders to stop fighting, in which they both complied, and started going to their rooms. After first responders arrived, both Offenders were placed into mechanical restraints and escorted off the unit.

Dkt. 12-1.

On May 30, 2025, facility staff notified Mr. Davis of the charge, provided him with a copy of the notice of disciplinary hearing and conduct report, and advised him of his rights. Dkt. 12-2. Mr. Davis pled not guilty. *Id.* He requested a statement from Mr. Ocampo, video footage, and body camera footage. *Id.* Department staff denied the request for body camera footage because it was "not available," but granted the other requests for evidence. *Id.* Mr. Davis asked Mr. Ocampo, "Were we fighting?" and Mr. Ocampo responded, "No." Dkt. 12-3.

On June 25, 2025, disciplinary hearing officer (DHO) Sergeant Pardue reviewed the facility video. Dkt. 12-6. His video report states, in part, that "[t]here is no video located inside the restroom, but you can clearly see the foot of Davis sideways in a manner that shows an altercation is occurring." *Id.* The report also

states that at 2:51:21 AM – Staff arrive and look inside the restroom. At 2:51:26 AM – Ocampo can be seen pushing Davis out of the restroom and Davis had his hands on Ocampo." *Id.* The Court's review of the video is consistent with the report.

On July 16, 2025, DHO Pardue held a disciplinary hearing. Dkt. 12-4. Mr. Davis pled not guilty and provided the statement, "we wasn't fighting." *Id.* DHO Pardue considered the facility video, the conduct report, statements from Mr. Davis and Mr. Ocampo, and photographs of Davis and Ocampo. *Id.*; dkt. 14 (*ex parte*). DHO Pardue relied primarily on the facility video, and found it was "more likely than not" that Mr. Davis battered Mr. Ocampo. Dkt. 12-4. Mr. Davis was sanctioned with a 90-day loss of earned credit time. *Id.*

Mr. Davis's appeals were denied. This habeas action followed.

## III. Discussion

Mr. Davis's claims are: 1) he was denied an impartial decisionmaker; 2) he was denied evidence; and 3) the evidence was not sufficient to support the DHO's finding of guilt. Dkt. 2 at 2-3.

### A. Impartial Decisionmaker

Mr. Davis first argues that the DHO was not impartial because Mr. Davis had recently filed a grievance and a federal lawsuit against the DHO, 1:25-cv-1215-JPH-TAB. He also argues that Mr. Ocampo's conduct report was reduced to "360 – Disruptive or Disorderly Behavior." *Id.* at 2.

Inmates facing disciplinary charges have a due process right to be heard by an impartial decision-maker. Hearing officers "are entitled to a presumption

of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667; *see Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024) (holding an inmate had impartial decisionmakers where "none [ ] were involved in the investigation or initial disciplinary report."). Another possible example of bias is if the DHO were found to have an intimate relationship with a crucial witness in the case. *See Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002).

Mr. Davis does not allege that the DHO was involved in the incident or the investigation thereof, or that he had an inappropriate relationship with a witness. Even if DHO Pardue was aware of the grievance before he conducted the hearing at issue in this case, there is no evidence that the grievance played any part in his decision-making. In addition, the Court takes judicial notice that the lawsuit, *Davis v. Arnold et al.,* 1:25-cv-1215-JPH-TAB, was filed on June 18, 2025. Notices of the lawsuit were not issued by the Court until January 7, 2026, long after the July 16, 2025, hearing.

Even if the DHO was aware that Mr. Davis filed a grievance or lawsuit, that alone is not sufficient to prove bias. *See Wilson-El v. Finnan*, 263 F. App'x 503, 505 (7th Cir. 2008) (DHO was not biased simply because petitioner had filed prison grievances or civil lawsuits against him). Moreover, "prisons need not require staff members who have been sued by an inmate to disqualify themselves from a disciplinary action concerning that inmate." *Id.* Even if Mr. Ocampo received a lesser charge, that is not clear evidence of any bias on the part of DHO Pardue. Mr. Davis is not entitled to relief on this claim.

**B. Denial of Evidence**

Mr. Davis contends that his requests for a statement from Mr. Ocampo and body cam footage evidence were denied. In fact, a statement was obtained from Mr. Ocampo on July 2, in which he denied that they were fighting. Dkt. 12-3. The body cam footage was denied because it was "not available." Dkt. 12-2.

Due process requires that in prisoner disciplinary proceedings, prisoners be given access to material, exculpatory evidence. *Johnson v. Brown,* 681 F. App'x 494, 496-97 (7th Cir. 2017). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

The petitioner must show beyond speculation or conjecture that the evidence he was denied was material and exculpatory. *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). "Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699

F. App'x 574, 576 (7th Cir. 2017). In this case, Mr. Ocampo's statement denying that they were fighting was obtained. The other evidence Mr. Davis requested was not available and prison staff could therefore not present it. *Manley,* 699 F.App'x at 576. Mr. Davis has not shown that he was denied any material evidence that would have undermined the finding of guilt. He is not entitled to relief on this claim.

**C. Some Evidence**

Mr. Davis also challenges the sufficiency of the evidence, arguing that there is no evidence that he battered Mr. Ocampo and that the video contradicts the finding of guilt. The video evidence, however, shows Mr. Davis entering the restroom after Mr. Ocampo and after a couple of minutes, the two are seen close to the restroom door with their arms up and on each other. Mr. Ocampo pushed Mr. Davis out of the restroom while Davis had his hands on Mr. Ocampo. Dkt. 15 (*ex parte*).

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. This is a "lenient" standard that requires only a "modicum of evidence." *Hawkins v. Sevier*, 169 F.4th 749, 753 (7th Cir. 2026). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472

U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (same).

Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011). The Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

The DHO was not required to give greater weight to Mr. Ocampo's statement that they were not fighting, especially given Mr. Ocampo's self-interest in denying they fought. "Battery" is defined as "knowingly or intentionally touching another person in a rude, insolent or angry manner." Dkt. 12-12 at 3. There was some evidence that supported the finding of guilt on that charge. The video evidence, along with Officer Corter's conduct report saying that he heard "arguing and scuffling" and then saw the two offenders "grappling," is sufficient to support a finding that Mr. Davis knowingly touched Mr. Ocampo in a rude or angry manner. Mr. Davis is not entitled to relief on this claim.

## IV. Conclusion

There was no constitutional infirmity in the proceedings which entitles Mr. Davis to the relief he seeks. Accordingly, Mr. Davis's petition for a writ of habeas corpus must be **denied.** Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 11/24/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

SONNY DAVIS
128888
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

Megan Michelle Smith
Office of Indiana Attorney General
megan.smith@atg.in.gov